UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ANDREW LUNDBERG,

    Plaintiff,

v.                                       CAUSE NO. 3:23-CV-137 DRL

BRADBURY *et al.*,

    Defendants.

## OPINION AND ORDER

Andrew Lundberg, a prisoner without a lawyer, is proceeding in this case against Officer Braxton Bradbury, Sgt. Antonio Allmon, Sgt. Larry Haskell, Sgt. Erica Hilliker, and Lt. Charles Wilson "in their individual capacities for compensatory and punitive damages for being deliberately indifferent to his needs related to the chemical spray on his body and in his cell from May 3, 2021 to May 11, 2021, in violation of the Eighth Amendment." ECF 40 at 6. The defendants filed a summary judgment motion, arguing (1) they were not deliberately indifferent to Mr. Lundberg's needs and, regardless, (2) they are entitled to qualified immunity. ECF 136. Mr. Lundberg filed a response, and the defendants filed a reply. ECF 140, 141, 142, 146. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such

that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

A violation of the Eighth Amendment consists of two elements: (1) an injury that is objectively serious enough to have deprived the inmate of the minimal civilized measure of life's necessities, and (2) the prison official must have acted with deliberate indifference to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the second prong, Mr. Lundberg must show the defendants "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quotations, brackets, and citations omitted). Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate indifference

claims will fail absent evidence of "callous disregard" for inmate wellbeing). "Negligence, or even objective recklessness, is insufficient to satisfy deliberate indifference." *Stockton*, 44 F.4th at 615. Thus, a prison official that takes "reasonable steps" to prevent harm to a prisoner is not liable for subsequent injuries, even if the official acted negligently or did not act as quickly as possible to abate all risks. *Bagola v. Kindt*, 131 F.3d 632, 647-48 (7th Cir. 1997); *see also Hunter v. Mueske*, 73 F.4th 561, 566 (7th Cir. 2023) (as long as a prison official takes measures "reasonably calculated" to address the risk faced by an inmate, he cannot be held liable under § 1983, even though he ultimately failed to prevent the injury).

The defendants provide their own affidavits. On May 3, 2021, Officer Bradbury was passing out hygiene equipment in Mr. Lundberg's cellhouse when Mr. Lundberg spit out of his cell at Officer Bradbury. ECF 136-2 at 1. Officer Bradbury ordered Mr. Lundberg to cuff up and, after Mr. Lundberg refused, administered a one-second burst of OC spray against Mr. Lundberg. *Id.* Officer Bradbury reported this use of force to his supervisor, Sgt. Allmon. *Id.* at 2. Sgt. Allmon went to Mr. Lundberg's cell and, after Mr. Lundberg refused additional orders to cuff up, administered another burst of OC spray to obtain his compliance. ECF 136-3 at 1. Mr. Lundberg continued to refuse orders to cuff up, which delayed Sgt. Allmon's ability to safely remove Mr. Lundberg from his cell and provide him a decontamination shower. *Id.* at 2. Once Mr. Lundberg complied with orders to cuff up, Sgt. Allmon and two other non-party correctional officers escorted him to the medical unit where he was provided a decontamination shower and given an opportunity to be evaluated by medical staff before he was returned to his cell. *Id.* Mr.

Lundberg had access to a sink with running water in his cell at all times, which he could have used to clean and decontaminate himself or his cell. *Id.*; ECF 136-6 at 2. If Mr. Lundberg needed new bedding or clothing, he could have submitted a request for these items to the receiving department. ECF 136-6 at 2.

In his response, Mr. Lundberg alleges a partially different view. Around 7:00 p.m. on May 3, 2021, Mr. Lundberg got into an argument with Officer Bradbury, and Officer Bradbury sprayed him with OC spray in his cell. ECF 140 at 3. Mr. Lundberg says he did not "assault" Officer Bradbury, but does not dispute that he refused Officer Bradbury's orders to cuff up. *Id.*; ECF 141 at 1. Between 7:00 p.m. and 11:00 p.m., Mr. Lundberg saw Officer Bradbury pass by his cell at least once and asked him for a decontamination shower, but he was ignored. ECF 140 at 3-4. Around 11:00 p.m., Sgt. Allmon arrived at Mr. Lundberg's cell and Mr. Lundberg asked him for a decontamination shower, but Sgt. Allmon again sprayed Mr. Lundberg with OC spray. *Id.* at 4. Mr. Lundberg doesn't explain why Sgt. Allmon sprayed him with OC spray on this occasion, but he doesn't dispute Sgt. Allmon's attestation that he again refused orders to cuff up. *Id.* Around 2:00 a.m., Mr. Lundberg complied with orders to cuff up and was escorted by Sgt. Allmon and two other correctional officers to the medical unit. *Id.* Mr. Lundberg entered the nurse's station and was offered a medical evaluation, but he refused any treatment because he wanted to get to the decontamination shower as quickly as possible. *Id.* at 5. Sgt. Allmon placed Mr. Lundberg in the decontamination shower and first turned on only the hot water for approximately 30 seconds, then turned on the cold water for approximately 30 seconds. *Id.* at 5-6. Sgt. Allmon then returned Mr. Lundberg to his cell, which had not

4

been decontaminated. *Id.* at 6. Between May 4 and May 11, Mr. Lundberg complained to Lt. Wilson, Sgt. Hilliker, and Sgt. Haskell about the need to decontaminate his cell, but his concerns were ignored. *Id.* He eventually developed mace burns all over his body. *Id.* On May 11, Mr. Lundberg was moved to a different cell. *Id.* at 6-7.

Here, no reasonable jury could conclude the defendants violated Mr. Lundberg's Eighth Amendment rights, as the undisputed facts show they took reasonable steps to decontaminate Mr. Lundberg following the application of OC spray. Specifically, it is undisputed that (1) following both applications of OC spray, Mr. Lundberg refused numerous orders to cuff up, which delayed the ability of the defendants to escort him to a decontamination shower; (2) Mr. Lundberg had access to running water in his cell at all times; (3) once Mr. Lundberg complied with orders to cuff up, he was escorted to the medical unit but he refused any medical treatment; and (4) Sgt. Allmon then provided Mr. Lundberg a minute-long decontamination shower before escorting him back to his cell. Because these steps were reasonably calculated to address the risk faced by Mr. Lundberg, the fact he ultimately suffered mace burns on his body does not make the defendants liable for his injuries. *See Hunter*, 73 F.4th at 566 (as long as a prison official takes measures "reasonably calculated" to address the risk faced by an inmate, he cannot be held liable under 42 U.S.C. § 1983, though he ultimately failed to prevent the injury).

In his response, Mr. Lundberg argues the defendants did not take reasonable steps to decontaminate him because they: (1) made him wait approximately seven hours for a decontamination shower following the initial application of OC spray; (2) provided an inadequate decontamination shower that used both hot and cold water; and (3) returned

5

him to his cell after the decontamination shower without first decontaminating his cell. Each of Mr. Lundberg's arguments will be addressed in turn.

First, Mr. Lundberg argues Officer Bradbury and Sgt. Allmon were deliberately indifferent for making him wait approximately seven hours for a decontamination shower following the initial application of OC spray. But in his response, Mr. Lundberg does not dispute Sgt. Allmon's attestations that he refused numerous orders to cuff up, which delayed their ability to provide him a decontamination shower. *See* ECF 136-3 at 1-2 (attesting that "I ordered Lundberg multiple times to cuff up, but he refused to do so. After the use of the OC spray, Lundberg continued to refuse orders to cuff up so that he could be safely removed from his cell. Lundberg's repeated refusals to comply with staff orders delayed our ability to safely remove Lundberg from his cell and to provide him with a decontamination shower."). Mr. Lundberg does not dispute that he refused numerous orders to cuff up, or that Sgt. Allmon took him to the medical unit as soon as he complied with the order to cuff up. Because it is undisputed Mr. Lundberg delayed the ability of the defendants to provide him a decontamination shower by refusing orders to cuff up, the fact he had to wait seven hours for a decontamination shower does not show the defendants exhibited "a total unconcern" for his welfare. *See Rodriguez v. Briley*, 403 F.3d 952, 953 (7th Cir. 2005) (inmate cannot be permitted to "engineer" a constitutional violation); *Kervin v. Barnes*, 144 F. App'x 551, 552 (7th Cir. 2005) (keeping an inmate in his cell after he has been sprayed with OC spray "until the disturbance has clearly ended" does not violate his Eighth Amendment rights); *Reed v. Roberts*, No. 3:22-CV-361-DRL, 2024 WL 4200440, 5 (N.D. Ind. Sept. 13, 2024) (defendants were not

6

deliberately indifferent for keeping a disruptive inmate in his cell for several hours following the application of OC spray to allow him time to calm down before escorting him to a decontamination shower). Moreover, it's undisputed Mr. Lundberg had access to a sink with running water in his cell at all times. Though Mr. Lundberg argues the sink in his cell was "very small" with "low pressure water" (ECF 141 at 12), he agreed at his deposition that he was able to use his sink to "immediately" wash his face following both applications of OC spray (ECF 136-1 at 11-13). Therefore, because it is undisputed Mr. Lundberg (1) delayed the defendants' ability to safely escort him to a decontamination shower by refusing numerous orders to cuff up, and (2) had access to running water in his cell at all times which he could use to wash himself, no reasonable jury could conclude the defendants' delay in providing him a decontamination shower exhibited "a total unconcern" for his welfare.

Second, Mr. Lundberg argues Sgt. Allmon violated his Eighth Amendment rights by providing him an inadequate decontamination shower. Specifically, he argues Sgt. Allmon first turned on only the hot water for approximately 30 seconds, which caused his pores to open, and then turned on the cold water for approximately 30 seconds, which caused his pores to close with the OC spray trapped inside his skin. ECF 141 at 5. But as discussed, it's undisputed Sgt. Allmon took reasonable steps to decontaminate Mr. Lundberg by escorting him to the medical unit so he could receive treatment, providing him a minute-long decontamination shower, and returning him to his cell where he had access to running water. In light of this evidence, no reasonable jury could conclude Sgt. Allmon exhibited "a total unconcern" for Mr. Lundberg's health or safety merely by

turning on the hot water and then the cold water in the shower. *See Whitlock v. Ornelas*, No. 3:22-CV-786-JD, 2025 WL 1927676, 3 (N.D. Ind. July 10, 2025) (because the correctional officers took reasonable steps to decontaminate the inmate following the application of OC spray by escorting him to the medical unit and providing a thirty-second decontamination shower, the fact they used hot water during the shower and failed to provide the inmate a towel fell "far short of the standard to show an Eighth Amendment violation."). Mr. Lundberg also argues the decontamination shower provided by Sgt. Allmon violated prison policy (ECF 141 at 6), but "Section 1983 protects against 'constitutional violations, not violations of . . . departmental regulation and . . . practices[.]'" *Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) (quoting *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003)). Thus, because it is undisputed Sgt. Allmon took steps reasonably calculated to decontaminate Mr. Lundberg by escorting him to the medical unit, allowing him an opportunity to see medical staff, providing him a minute-long decontamination shower, and returning him to his cell with running water, no reasonable jury could conclude Sgt. Allmon exhibited "a total unconcern" for Mr. Lundberg's welfare merely by using both hot and cold water during the decontamination shower. *See Hunter*, 73 F.4th at 566.

Third, Mr. Lundberg argues that Sgt. Allmon was deliberately indifferent for returning him to his cell after the decontamination shower without first decontaminating the cell, and that Sgt. Haskell, Sgt. Hillinger, and Lt. Wilson were deliberately indifferent for keeping him in that cell for the next week despite his requests to have the cell cleaned. Here, it is undisputed Sgt. Allmon and Officer Bradbury each deployed a "one-second

8

burst" of OC spray against Mr. Lundberg in his cell. There is no evidence indicating how much OC spray remained in Mr. Lundberg's cell following the decontamination shower. Assuming that some OC spray remained in Mr. Lundberg's cell following the shower, there's no evidence this posed a "substantial risk" to Mr. Lundberg's health or safety. *See Stockton*, 44 F.4th at 615; *Buchanan v. Pfister*, No. 17-CV-8075, 2018 WL 4699778, 7 (N.D. Ill. Oct. 1, 2018) ("Courts have routinely held that the lingering effects of being pepper-sprayed or exposed to similar chemical agents are not objectively serious medical conditions.") (collecting cases); *Rivera v. MacAdory*, No. 96 CV 4674, 1997 WL 17811, 3 (N.D. Ill. Jan. 16, 1997) (explaining that because plaintiff was able to wash himself after exposure, the "lingering unpleasant effects of the mace" after washing his eyes and face was not a "serious medical need"). As discussed, it is undisputed Mr. Lundberg had access to running water in his cell at all times. Sgt. Hilliker attests that Mr. Lundberg could have used the running water in his cell to clean and decontaminate the cell and could have submitted a request for new clothing or bedding to the receiving department, and Mr. Lundberg does not dispute this attestation. ECF 136-6 at 2. Mr. Lundberg does argue that staff did not pass out cleaning supplies and there was no "laundry" done during May 2021 due to a prison-wide lockdown (ECF 141 at 10-11), but this doesn't dispute Sgt. Hilliker's attestations that he could have cleaned his cell with water and submitted a request to the receiving department for new clothing and bedding. Thus, because it's undisputed Mr. Lundberg had the ability to decontaminate his own cell and obtain new clothing and bedding, no reasonable jury could conclude the OC spray

9

remaining in Mr. Lundberg's cell posed a "substantial risk" to his health or safety or that the defendants acted with "a total unconcern" to that risk.

Accordingly, because the undisputed evidence shows the defendants took steps reasonably calculated to decontaminate Mr. Lundberg following the application of OC spray, no reasonable jury could conclude the defendants violated Mr. Lundberg's Eighth Amendment rights.

Alternatively, even assuming a reasonable jury could conclude the defendants violated Mr. Lundberg's Eighth Amendment rights, the defendants are nevertheless entitled to qualified immunity. "Qualified immunity protects government officials from civil liability when performing discretionary functions so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001) (quotations and citation omitted). To overcome a qualified immunity defense, "a plaintiff must show the deprivation of a constitutional right, and must also show that the right was clearly established at the time of the violation." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) (citing *Alvarado*, 267 F.3d at 652). To show that a right is clearly established, the burden is on the plaintiff to "demonstrate that existing caselaw at the time of the events in question 'placed the statutory or constitutional question beyond debate.'" *Dockery v. Blackburn*, 911 F.3d 458, 466 (7th Cir. 2018). A violation is only clearly established where: (1) a closely analogous case establishes that the conduct is unconstitutional; or (2) the violation is so obvious that a reasonable state actor would know that his actions violated the Constitution. *Siebert v. Severino*, 256 F.3d 648, 654–55 (7th Cir. 2001). "[A] defendant

10

cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014).

In *Stone v. Couch*, No. 1:19-CV-01193-TWP-DML, 2021 WL 4247870 (S.D. Ind. Sept. 17, 2021), the Southern District of Indiana addressed the application of qualified immunity to a similar set of facts:

> It is undisputed that Mr. Stone received a brief decontamination shower. It is also undisputed that he was evaluated by a registered nurse shortly after the incident and prior to returning to his cell. Mr. Stone has not pointed to any authority in the Seventh Circuit or the Supreme Court that establishes that he was entitled to decontamination measures beyond what he received after exposure to the OC spray. Given Mr. Stone's pro se status, the Court reviewed whether such authority exists, but it has found no such support that meets this burden. Given the facts in Mr. Stone's case, the Court cannot say that only someone "plainly incompetent" or who "knowingly violate[s] the law" would have perceived that deprivation of further decontamination measures beyond a shower and timely medical evaluation violates an inmate's Eighth Amendment rights. In other words, not every reasonable officer understood that following the administration of OC spray, an air-drying chemical agent that dissipates, a prisoner is entitled to clean clothing, a longer or subsequent decontamination shower, and/or the ability to clean the cell.

*Stone*, 2021 WL 4247870 at 5.

Here, as in *Stone*, Mr. Lundberg has not pointed to any authority in the Seventh Circuit or the Supreme Court that establishes he was entitled to decontamination measures beyond what he received after exposure to the OC spray. Moreover, this court reviewed whether such authority exists and found no such support. Therefore, given the facts in this case, the court cannot say that only someone "plainly incompetent" or who "knowingly violates the law" would have

11

perceived the decontamination measures provided to Mr. Lundberg violated his Eighth Amendment rights. Accordingly, even if Mr. Lundberg had provided sufficient evidence by which a reasonable jury could conclude the defendants violated his Eighth Amendment rights, summary judgment remains appropriate in favor of the defendants because they are entitled to qualified immunity.

For these reasons, the court:

(1) GRANTS the defendants' motion for summary judgment (ECF 136); and

(2) DIRECTS the clerk to enter judgment in favor of the defendants and against Andrew Lundberg and to close this case.

SO ORDERED.

November 7, 2025				*s/ Damon R. Leichty*
						Judge, United States District Court